## WALTER v ZANES

Ohio Appeals, 2nd Dist, Franklin Co

No 2921. Decided March 27, 1939

Clarence L. Corkwell, Columbus, for plaintiff.

Isidore Margulis, Columbus, for defendant.

(GUERNSEY, J, of the Third District, sitting by designation.)

### OPINION

By BARNES, J.

The above-entitled cause is now being determined as an error proceeding by reason of defendant's appeal on questions of law from the judgment of the Court of Common Pleas of Franklin County, Ohio.

The action was one for personal injuries, the petition being filed November 5, 1936. The date of the injuries was August 29, 1936, at one o'clock A. M.

On the night in question plaintiff was driving his automobile in the direction of his home in the southern part of the city. It was his intention to stop at the grill of the defendant, located at the corner of Parsons and Livingston Avenues. It had been his custom for a long period of time to stop at this grill on his way home at night for the purpose of having a serving of grape fruit. The grill was owned and operated by Peter Zanes and his son George, the building being owned by Peter Zanes. The building was approximately 78 feet in length and was divided into three business rooms, the defendant and his son occupying the corner room; the middle room by David Schneider as a pool room, and the next room by Mr. Kols as a barber shop.

At the east end of this building and on the outside thereof there was constructed an outside stairway as an entrance to the cellar under the building. This stairway was of cement construction, and was about four or five feet in width. At this point and extending westwardly for about half the length of the structure, the building had been constructed on the property line. The entrance or first step of this stairway stood back 2½ feet from the property line. A metal guard was built around the side and back. The sidewalk along the building was approximately 12 feet in width and extended from the curb to the building, except at the west end where the building was set back from the sidewalk line, probably due to the fact that Livingston Avenue did not cross Parsons at right angles, and therefore left a sharp angle on the northwest corner of plaintiff's premises. Plaintiff's lot extended eastwardly from the cellarway a distance of approximately 10 feet and was vacant. The premises immediately east of plaintiff's east line was a vacant lot, upon which was located a large billboard and at night the same was lighted rather brilliantly.

Plaintiff claims that on the night in question he found several cars parked on Livingston Avenue, so he had to drive farther east to find parking space. He is not able to state definitely as to his exact parking location, but it is inferable that he drove into the curb about opposite or a little east of the entrance to the cellarway. Thereafter his claimed movements may be best understood by quoting from his testimony:

"Q. What was the condition of the weather as you parked?

A. Why it was pouring down rain; probably it was one of the worst nights of rain we had in a year.

Q. Well, tell what you did.

A. I just hopped out of the car, and when I got out it was dark and pouring down rain, and I ran into the building, like you know, how you will do for protection of a building, and that is the last I remember; I went down in the hole.

Q. Well, state whether or not you hit any gate or door, or any thing of that kind.

A. I don't—I didn't hit a thing."

Plaintiff was severely injured, sustaining a broken leg and scalp wounds and contusions of his hands, wrists and face.

Plaintiff's complaint against the defendant, as set out in the petition, among other things alleged the following acts of negligence:

"Plaintiff says that on said date and prior thereto the defendant carelessly and negligently permitted said cellarway to remain open and unguarded, and without any light, signal or protections to prevent accidents to passers by, when he knew, or by the exercise of reasonable diligence should have known, that said cellarway constituted a menace to persons in the lawful use of the sidewalk."

Defendant in his answer, after making some admissions, denied all acts of negligence on his part.

The trial before a jury resulted in a verdict of $500.00 in favor of the plaintiff. Thereafter motion for new trial was interposed, overruled and judgment entered on the verdict. Then followed notice of appeal on questions of law. The amount of the verdict is not questioned, but merely the right of the plaintiff to recover at all.

Other than plaintiff himself he presented no evidence that the cellarway was unguarded at this entrance.

It was the contention of the defendant that the entrance to the cellarway was guarded, by a 2x4 hinged to the building on one end and wired to an upright at the other, located at the end of the railing.

2. That the lighted sign in close proximity to the entrance to the stairway was of such brilliance as to light up the entire east end of the building, including the stairway.

3. That since the cellarway was back from the property line 2½ feet, that plaintiff was a trespasser and that defendant owed him no duty other than to refrain from wilfully and wantonly injuring him.

The first witness called by the defendant was Ernest R. Martin, who, on the date of the alleged injury, was employed as a porter in the barber shop located in the building of Mr. Zanes. This barber shop was immediately west of the cellarway, with a window opening out to the east. He testified that on April 6, 1936, that he constructed and put in place a guard to this cellarway, at the request of one of the Zanes. This guard took the place of a former guard that had been torn down by some mischevious boys. The type of guard can best be explained by quoting from his testimony:

"Q. Now just tell the court and jury exactly what type of guard you put up there.

"A. The guard I put up was a 2x4; I would say it was about 3½ feet long, at one end of it I put a hinge on it and fastened it on the end of the building, the front part where the windows are, and the other end was hanging on an upright inch plank and wired to the permanent guard that was on the cellarway."

The witness further testified that he alone carried the key to the cellar door at the bottom of the cellar stairs; that anyone desiring to go into the cellar had to procure the key from him or have him unlock the door. That at or near the time in question the most frequent use of the cellarway was by the beer men who would take containers in and carry out empties. That on the night in question about 6:30 P. M., he

unlocked the door for these beer men and after they left he relocked it and then put the guard at the top of the stairway back in place. This witness also testified to the brilliancy of the lights on the big advertising sign on the adjacent lot. He states that these lights were of such power that the rays therefrom coming through the window on the east end would enable you to read a newspaper within the barber shop. He also presents evidence that it was the rule to keep the lights on the sign burning all night.

This witness further testifies that the next morning following the alleged accident that the 2x4 guard was found at the bottom of the cellarway. There is also evidence that the screws holding the hinges to the building had been torn out.

The defendant and also his son, George Zanes, testified that the cellarway was guarded by this 2x4 construction. They each in a general way describe the character of this guard and the manner and method by which it was held in place. The son George also testified to its being found at the bottom of the cellarway the next morning. The defendant explained in detail as to the screws holding the hinge being torn out.

David Schneider, a tenant of the Zanes, occupying the middle room of the building, was also called as a witness. He testified that he was one of the men that helped to get the plaintiff out of the cellarway after he had fallen in. He further states that the lights on the billboard were burning and that the rays therefrom lighted up this cellarway. He corroborates the other witnesses as to the construction and maintenance of the guard and that it was broken down the morning following the accident.

The testimony of this witness was shaken somewhat in the cross-examination relative to the lights on the signboard. In direct examination he had stated that the lights were burning on the night of this accident. It seems that after the action was filed, Mr.

Schneider's deposition had been taken and therein he had stated that he did not remember exactly about the lights on the night in question, but that they were always burning. From this interrogation it is inferable that the witness Schneider was relying upon conditions generally as he knew them rather than any specific recollection of the night in question.

The next witness called was A. F. Bauman, a police officer, who had been on the force for about eleven years. For about eight years his beat was around this section of the city. This witness testified that some time in 1935 he had a fall at this stairway, laying him up for a couple of days and that since that time there has always been a guard or barrier across the entrance.

This witness also testifies relative to the lights, and he can only remember one night on which they were not burning.

Mr. Ernest H. Stork, draftsman in the city engineer's office, was called as a witness. He identified a plat that he had made of the plaintiff's property, including the cellarway, sidewalks, streets, adjacent property, and so forth, all made to scale. This draft is very helpful in enabling us to better understand the testimony of the witnesses.

Plaintiff testified that before this accident he had lost the vision in one of his eyes.

Under the pleadings in this case we are not presented with any claim of the insufficiency of the constructed guard, but rather the claim of plaintiff that there was no guard at all. On this issue we feel we must find that the verdict of the jury is against the manifest weight of the evidence.

We recognize the rule that reviewing courts should proceed with caution before setting aside a verdict on the weight of the evidence. We also have in mind the principle of law that the number of witnesses on one side or the other is not necessarily controlling.

Plaintiff for a time following his fall was unconscious and probably was semiunconscious until he reached the

hospital. It is not unusual when a person has received a head injury of such moment as to render him unconscious that he has no recollection of the happenings immediately preceding the injury. In a measure this is borne out in the instant case where plaintiff testifies:

"I just hopped out of the car and when I got out it was dark and pouring down rain, and I ran into the building, like you know, how you will do for protection of a building, and that is the last I remember; I went down in the hole."

Under this situation, we do not think that the testimony of the five witnesses testifying as to this guard rail should be entirely disregarded. The police officer was certainly a wholly disinterested witness. The porter in the barber shop and Schneider, the tenant in the center room, were certainly disinterested at the time of the trial as neither of them were then occupants of the building. That the guard rail was in place is evidenced by the fact that the next morning it was found to have been torn loose and was down at the bottom of the cellarway.

The evidence relative to the lights on the signboard supports the conclusion that generally they were kept lighted all night and and were of such brilliance as to light up this cellarway. However, we would not disturb the verdict on this theory since it might be that this was the only particular night that they were not burning.

According to plaintiff's own testimony, it was very dark and consequently he should have moved with caution. If it was so dark that he could not see the building, it was a serious question if he would be in the exercise of ordinary care in attempting to run to it without knowing where it was. The distance from the curb to the building was approximately 12½ feet. The first step of the cellarway was 2½ feet farther in, so the direct line from the curb to the top step would be 15 feet. Had he been two, three or four feet farther west, he would have slammed into the building. In any event, he passed the building and did not see it.

This brings us to the further issue presented through defendant's answer, in effect that plaintiff was a trespasser and therefore should not be permitted to recover. The general rule of law is well recognized that the owner of premises is not required to guard pitfalls existing thereon. There is an exception to this rule equally well recognized that where the excavation or pitfall is in such close proximity to a public way or sidewalk that a person in the proper use of such sidewalk might accidentally fall into such excavation, a duty rests upon the owner of the property to properly guard such excavation. No fixed distance has been determined wherein this duty rests upon the property owner. It varies under varying situations and conditions. It is very doubtful that the plaintiff according to his own testimony was using the public sidewalk in a proper way. He was running across it and not moving in its lengthwise course. He had a perfect right after parking his car to move over the curb and up on to the sidewalk but he certainly did not have the right to run blindly a distance of 15 feet into a cellarway.

Under all the circumstances of this case, we have arrived at the conclusion that plaintiff was guilty of contributory negligence as a matter of law, and that defendant's motion for a directed verdict should have been sustained.

The judgment of the lower court will be reversed, and final judgment entered in favor of the defendant. Plaintiff's petition will be dismissed at his costs.

GUERNSEY, J, concurs.

HORNBECK, PJ: I dissent from the judgment entered in behalf of defend-

ant. Concur in the reversal on the weight of the evidence.